## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOROTHY B. WEBER and | : | CIVIL ACTION |
| ROBERT P. WEBER, h/w | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| NATIONWIDE MUTUAL INSURANCE | : | NO. 12-02671 |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                              June 12, 2012

Currently pending before the Court is the Emergency Motion for Remand to State Court of Plaintiffs Dorothy B. Weber and Robert P. Weber (collectively referred to hereinafter as "Defendants" or "the Webers.")  For the following reasons, the Motion is granted.

### I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Webers are a married couple residing in Kennett Square, Pennsylvania.  On October 30, 2007, Dorothy was struck by a motor vehicle operated by a third party, Richard Wade.  (Pls.' Emergency Mot. Remand ("ER Mot. Rem.") ¶ 2.)  As a result of the collision, Dorothy sustained serious physical and mental injuries, prompting the Webers to file suit against Wade and his corporation, Wade & Company, LLC.  (Id. ¶¶ 2, 3.)  In February of 2012, Wade apparently offered to settle the dispute by agreeing to binding high/low arbitration.  (Id. ¶ 4.)  The limit on Wade's insurance policy was $300,000.  (Id. ¶ 6.)

The Webers hold an uninsured/underinsured motorist insurance policy ("UIM") issued by

Defendant Nationwide Mutual Insurance Company ("Nationwide" or "Defendant"). Upon receiving notification of the aforementioned settlement,[1] the Webers were required to transmit the offer to Nationwide under Pennsylvania law.[2]  (Id. ¶ 5.)  After receiving notification of the settlement, Nationwide was thereafter required to either: (1) approve it and accept a credit up to the limit of Wade's policy for future actions brought by Plaintiffs for UIM benefits; or (2) tender the full value of Wade's policy limit and pursue its subrogation rights.[3]  (Id.)  According to the Webers, Nationwide has declined to exercise either option.  (Id. ¶ 6.)  Defendant, on the other hand, avers that it received no notice or documentation of a proposed settlement with Wade, and therefore was not required to take any action.  (Def.'s Resp. ¶ 6.)

On April 25, 2012, the Webers filed a declaratory action in the Pennsylvania Court of

---

[1]  Whether or not the binding high/low arbitration agreement reached between the Webers and Wade constitutes a settlement is an issue that is disputed by the parties.  Resolution of this issue, however, is not relevant to the subject matter of the instant Motion.  As such, for purposes of this Motion only, the Court will assume without deciding that the arbitration agreement could constitute a settlement between Plaintiffs and the tortfeasor.

[2]  Plaintiffs cite Daley-Sand v. West American Insurance Company, 564 A.2d 965 (Pa. Super. Ct. 1989) as support for this proposition.

[3]  Subrogation is an equitable principle of law which seeks to place the burden of a debt on the person who actually committed the wrong.  The Pennsylvania courts have defined the principle as follows:

> When an insurer pays a claim under a policy, it is actually paying the debt of the tortfeasor. The insurer is only secondarily liable; it is the tortfeasor who is primarily liable. Once the insurer has paid a claim to the insured, it may then stand in the shoes of the insured and assert the insured's rights against the tortfeasor. The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation.

Daley-Sand, 564 A.2d at 969.

2

Common Pleas, requesting the court to determine whether the arbitration agreement constituted a "settlement" under Pennsylvania law.  (ER Mot. Rem. ¶ 7.)  Specifically, the Webers requested the Court of Common Pleas to compel Nationwide to: "either (a) approve [the] binding high/low arbitration . . . ; or (b) exercise its subrogation rights; or in the alternative, DECLARE that by declining to either approve or subrogate, Nationwide has waived its right to subrogate in this case, resulting in automatic approval."  (Def.'s Notice of Removal, Ex. A, Action for Declaratory Judgment ("PA Decl. Act.") ¶ 18.)

Nationwide removed the matter to federal court on May 16, 2012.  (ER Mot. Rem. ¶ 8.) Plaintiffs filed the instant Emergency Motion for Remand to State Court on May 22, 2012.[4] Defendant filed its Response on May 30, 2012.  This matter is now ripe for judicial consideration.

## II.    STANDARD OF REVIEW

It is well-recognized that a party may remove to federal court a civil action originally filed in state court if the federal court would have had original jurisdiction to hear the matter in the first instance.  See The Bachman Co. v. MacDonald, 173 F. Supp. 2d 318, 322 (E.D. Pa. 2001) (internal citations omitted).  Once the case has been removed, "'the federal court may remand if there has been a procedural defect in removal.'"  Id. (citing Kimmel v. DeGasperi, No. Civ.A.00-143, 2000 WL 420639, at *1 (E.D. Pa. Apr. 7, 2000)).  Remand is mandatory if the federal court finds that it lacks subject matter jurisdiction over the suit.  The Bachman, 173 F. Supp. 2d at 322 (citing 28

_____

[4] Although unclear from its text, it appears that the Webers classify their Motion as an "emergency" because the date of their independent trial against tortfeasor Wade is "fast approaching," and could essentially nullify the already-reached arbitration agreement.  (ER Mot. Rem. ¶ 30.)  Plaintiffs provide the Court with no further information on this point, nor do they specify the precise date of this allegedly "fast approaching" trial date.  Despite Plaintiffs' lack of identification and information, the Court will nonetheless consider this imminent trial date as a looming threat, and will therefore resolve Plaintiffs' Motion as expeditiously as possible.

U.S.C. § 1447(c)).  Moreover, the removing party bears the burden of proving the existence of subject matter jurisdiction.  Id.

## III.  DISCUSSION

In the instant action, Nationwide removed this case to federal court pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  Section 1332 governs diversity actions in federal court, and provides as follows: "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States[.]" 28 U.S.C. § 1332(a)(1).  Thus, in order for a case solely involving state law claims to be heard in federal court on account of diversity jurisdiction, two elements must be satisfied: (1) there must be complete diversity of citizenship among the parties; and (2) the disputed amount must be greater than $75,000.

Here, the Webers aver that this Court lacks subject matter jurisdiction over this suit because the amount in controversy is less than $75,000, and this action should therefore be remanded back to the Court of Common Pleas.[5]  Specifically, Plaintiffs allege that the basis of their state declaratory action does not compel Nationwide to pay more than $75,000, but rather requests the Court to compel Nationwide to *decide* whether or not it will approve the high/low arbitration amount or alternatively decide to exercise its subrogation rights.  (ER Mot. Rem. ¶ 18.)  In essence, Plaintiffs request that the Court determine the rights and responsibilities of the parties here—*not* allocate damages.  In the event that this Court does find that the amount in controversy exceeds $75,000, the

_____

[5] It is undisputed that complete diversity among the parties exists here.  The Webers are Pennsylvania residents, while Nationwide is headquartered in Ohio.  (Def.'s Notice of Removal ¶¶ 5, 6.)  Thus, the first element of the diversity jurisdiction analysis is satisfied under the present circumstances, and only the amount in controversy element is disputed by the parties.

Webers assert that it should nonetheless decline to entertain suit because the exercise of diversity jurisdiction in federal court is discretionary. (Id. ¶ 20.) In response, Defendant avers that the amount in controversy element is met because, in declaratory actions related to insurance contracts, this amount is determined "by assessing the value of the underlying legal claims for which insurance coverage is sought," which, according to Defendant, exceeds the statutory minimum in this case. (Def.'s Resp. ¶¶ 15, 18.)

### A.    The Amount in Controversy

The district court in Miller v. Liberty Mutual Group, 97 F. Supp. 2d 672 (W.D. Pa. 2000) faced a largely similar issue and factual scenario. In that case, the plaintiff's husband was killed in a motor vehicle accident. Id. at 673. At the time of the accident, the decedent's motor vehicle insurance policy had a limit of $2,000,000. Id. Plaintiff filed a declaratory action in state court, requesting a determination of whether the insurance policy provided UIM coverage for the decedent's injuries and death, and, if so, the amount available under the policy. Id. The insurance company subsequently removed the action to federal court. Id. The plaintiff thereafter sought to remand the case back to state court on the grounds that the amount in controversy element of diversity jurisdiction had not been satisfied because she sought declaratory—not monetary—relief. Id. In assessing the claim, then U.S. District Court Judge D. Brooks Smith found the amount in controversy element satisfied. Id. at 674. In so finding, Judge Smith relied on Jumara v. State Farm Insurance Company, 55 F.3d 873 (3d Cir. 1995) and Manze v. State Farm Insurance Company, 817 F.2d 1062 (3d Cir. 1987), in which the Third Circuit found that the amount in controversy is determined by the value of the underlying cause of action, regardless of whether the action seeks declaratory or monetary relief. Jumara, 55 F.3d at 877; Manze, 817 F.2d at 1068. In both cases, the

Third Circuit looked to the defined policy limit in determining the amount in controversy. <u>Jumara</u>, 55 F.3d at 876–77; <u>Manze</u>, 817 F.2d at 1068.  Applying the findings of <u>Jumara</u> and <u>Manze</u> to the dispute in <u>Miller</u>, Judge Smith held that: "the underlying cause of action in this case is a claim for money under an insurance contract. . . . Given that . . . the policy limit is $2,000,000, there is no reason to reach any other conclusion than that plaintiff's ultimate recovery will be $75,0000 or more." <u>Miller</u>, 97 F. Supp. 2d at 674–75.

This Court finds the holdings of <u>Miller</u>, <u>Jumara</u>, and <u>Manze</u> instructive here.  Just as in those cases, despite the fact that Plaintiffs seek declaratory relief, the "underlying cause of action" here is a claim for money owed to them under an insurance contract.  The limit of the insurance policy here is $300,000—an amount that far exceeds the jurisdictional floor of $75,000.  Therefore, in assessing the insurance policy at issue, it is evident that the requirements of federal court diversity jurisdiction are satisfied.

Moreover, the language of Plaintiffs' own Motion demonstrates that the amount in controversy requirement is met under these circumstances.  According to the Webers:

> In Pennsylvania, accident victims are permitted to settle with tortfeasors for less than the tortfeasors' policy-limits without waiving their right to collect under an UIM policy.  Where such a settlement occurs, however, the insurance provider is entitled to compute its own payment to the insureds *as though the tortfeasor's policy limits had in fact been paid*. . . . [I]n this case, a decision that the tortfeasor's offer to go to binding high-low arbitration is a "settlement" under Pennsylvania law does not compel Nationwide to pay more than $75,000.  Instead, it compels Nationwide to decide whether it wishes to waive its right to subrogate (at no cost to them) or to undertake the Weber's representation *while advancing them the tortfeasor's policy limits*.

(ER Mot. Rem. ¶¶ 17, 18) (emphasis added).  This language echoes the fact that the amount in controversy would exceed $75,000 in this case, regardless of which course of action Nationwide

6

pursued under Pennsylvania law. Under the first option, if Nationwide chose to approve the binding arbitration amount, it would be entitled to receive a credit equaling the tortfeasor's policy limit towards any claim by the Webers for UIM benefits from Nationwide.  According to Defendant, Plaintiffs seek damages in excess of $300,000.  (Def.'s Resp. ¶ 18.)  Upon acceptance of the arbitration amount reached as a "settlement" with the tortfeasor, the Webers could then attempt to collect additional proceeds from Nationwide pursuant to their UIM policy.  In such a situation, Nationwide would receive a credit of up to $300,000—the limit of Wade's insurance policy.  Even if Nationwide ultimately pays the Webers less than $75,000 as a result of the credit available to it under this first option, the overall amount of the underlying cause of action would still exceed $75,000 because Plaintiffs have claimed damages in excess of $300,000.

On the other hand, if Nationwide were to instead opt for the second choice, it would be required to undertake representation of the Webers while, in the interim, advancing them the full amount of the tortfeasor's policy limits.  In such a scenario, the amount in controversy would also be satisfied because Nationwide would have given $300,000—an amount well over the statutorily required $75,000—to Plaintiffs.

Thus, Plaintiffs' declaratory judgment action satisfies the amount in controversy threshold of diversity jurisdiction because the underlying cause of action under either option available to Nationwide exceeds $75,000.  In light of the foregoing, the Court finds that diversity jurisdiction is proper under 28 U.S.C. § 1332.  As such, Plaintiffs' Emergency Motion for Remand on these grounds is denied.

**B.** **Discretionary Exercise of Diversity Jurisdiction in Declaratory Actions**

The Webers further allege that, even if this Court finds that the amount in controversy exceeds $75,000, it should nonetheless decline to exercise jurisdiction because a parallel proceeding is pending in state court, and this case only involves issues of state law that would be better settled by the state courts.  (ER Mot. Rem. ¶ 20.)

The Declaratory Judgment Act does not require federal district courts to exercise jurisdiction over every declaratory action, but rather serves as "an enabling Act, which confers a discretion on the courts[.]"  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).   The Act specifically provides that: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  "Thus, under the Declaratory Judgment Act, district courts possess discretion in determining whether and when to entertain the action, even when the suit otherwise satisfies the prerequisites for subject matter jurisdiction."  Allstate Ins. Co. v. Seelye, 198 F. Supp. 2d 629, 631 (W.D. Pa. 2002).   The power of the federal courts to decline to entertain declaratory actions, however, is not without limits.  The Third Circuit has recognized that district courts may not "decline jurisdiction over a declaratory judgment action when the issues include [ ] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding."  State Auto Ins. Co. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000) (further citation omitted).

None of these exceptions to the discretionary exercise of jurisdiction in declaratory actions are present in the instant case.  Rather, as noted by the Seelye Court, "this action presents the all too common case of an insurance company coming to federal court, under diversity jurisdiction, to

receive declarations on purely state law matters." <u>Seelye</u>, 198 F. Supp. 2d at 631. Indeed, the Third Circuit has recognized that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum. . . . [I]n resolving its own law, [a state court] must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum." <u>Summy</u>, 234 F.3d at 136. Here, there are no federal interests at stake, and the requested relief would require this Court to engage in an analysis of solely state law claims. As such, this Court agrees with Plaintiffs that such an interpretation is better left to the discretion of the Court of Common Pleas.

Moreover, the Third Circuit has further counseled the district courts to express "hesitation" in exercising jurisdiction over declaratory judgment actions "when the state law involved is close or unsettled" because it would be "counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law [or] questions which might otherwise be candidates for certification to the state's highest court." <u>Id.</u> at 135 (internal citations omitted). In such instances, the matter "should proceed in normal fashion through the state court system." <u>Id.</u> In the instant case, it is uncontested that Plaintiffs' requested relief would require this Court to interpret well-settled Pennsylvania state law. <u>See</u> <u>Daley-Sand v. W. Am. Ins. Co.</u>, 564 A.2d 965 (Pa. Super. Ct. 1989). In fact, both parties admit as much in their briefing submitted to this Court. (<u>See</u> PA Decl. Act. ¶¶ 12, 13 ("It is by now *well-settled* that insured accident victims are permitted to settle with tortfeasors for less than the tortfeasors' policy-limits without waiving their rights under an underinsured motorist policy. . . . Pennsylvania courts have *repeatedly acknowledged* that binding high/low arbitrations are, in fact, a kind of settlement.") (emphasis added); Def.'s Resp. ¶ 13 ("[T]his case involves *well-settled* Pennsylvania law as established by <u>Daley-Sand</u> and subsequent cases.") (emphasis added).)

Furthermore, the Court gives credence to the fact that there is an action pending in state court that is substantially related to the instant dispute.[6]  On this point, the Third Circuit has recognized that "[a] federal court should [ ] decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation."  Summy, 234 F.3d at 135 (internal citations omitted).  The Supreme Court of the United States has likewise noted that:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942); see also Wilton, 515 U.S. at 282–88. Here, Plaintiffs have filed an independent state action against the tortfeasor in this case, Richard Wade.  However, until Nationwide decides whether to accept the alleged settlement offer or alternatively pursue its subrogation rights, the Webers cannot move forward against Wade because Nationwide's decision will dictate whether they will accept the arbitration award or proceed to trial. Put differently, until Nationwide acts, Plaintiffs likewise cannot take action. Given the substantially similarities between this litigation and the case pending in state court, it is evident that this factor also weighs heavily against exercising jurisdiction here.

---

[6] On this point, Plaintiffs further allege that "by removing the instant declaratory action to federal court, Nationwide seeks to delay resolution of the issue, compelling the Webers to shoulder the costs of litigation against Richard Wade." (Def.'s Resp. ¶ 27.)  Plaintiffs therefore request the Court to award them the payment of costs and attorneys' fees that they incurred as a result of the removal to federal court.  To support their allegations, Plaintiffs cite to two state court cases addressing allegedly improper legal tactics utilized by Nationwide.  These cases, however, bear no relation to the instant litigation, as they involve entirely different parties, facts, and circumstances.  Aside from the citation of these two cases, Plaintiffs have provided no evidence indicating that Nationwide's conduct here was improper or motivated for the purpose of delaying resolution of this dispute.  Absent such evidence, the Court declines to award Plaintiffs costs and attorneys' fees on the basis of an improper removal to federal court.

Finally, the Court notes that our sister courts within the Third Circuit's jurisdiction have recognized that "a party's objection to a district court's exercise of jurisdiction is a factor that would support the decision to decline jurisdiction[.]"   Seelye, 198 F. Supp. 2d at 632.   Here, the Webers—parties to both this action and the substantially related action against Wade pending in state court—object to this Court's exercise of jurisdiction over the instant case.  This consideration further tips the scale in favor of declining to exercise jurisdiction here.

In sum, based on the fact that there are no federal interests involved here, resolution of the declaratory judgment would solely involve interpretation of well-settled state law, and the fact that there is related proceeding pending in state court, the Court finds that resolution of the instant action is better left to the discretion of the Court of Common Pleas.  In utilizing its discretionary judgment, this Court therefore declines to exercise jurisdiction here.

## IV.   CONCLUSION

For the aforementioned reasons, the Court grants Plaintiffs' Emergency Motion for Remand to State Court.  Although Defendant has met the amount in controversy requirement of diversity jurisdiction under 28 U.S.C. § 1332, this Court, in the exercise of its discretion, will nonetheless decline to exercise jurisdiction over this declaratory judgment action.

An appropriate Order follows.